UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONIONS ETC., INC. and DUDA FARM FRESH FOODS, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>Z&S FRESH INC., a California corporation, fdba Z&S DISTRIBUTING COMPANY, INC., a California corporation; MARTIN J. ZANINOVICH, an individual; LOREN SCHOENBURG, an individual; MARGARET aka MARGE SCHOENBURG, an individual,<br><br>   Defendants. | 1:09-cv-00906 OWW MJS<br><br>MEMORANDUM DECISION AND ORDER RE (1) TRUSTEE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; AND (2) DEFENDANTS, LOREN SCHOENBURG'S AND MARGARET SCHOENBURG'S, MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, ADJUDICATION OF ISSUES<br><br>(DOC. 689, 680) |

I. **INTRODUCTION**

On May 22, 2009, two sellers of perishable agricultural commodities, Onions Etc., Inc. and Duda Farm Fresh Foods, Inc., commenced this action against Z&S Fresh, Inc. fdba Z&S Distributing Co., Inc. ("Z&S"), Martin Zaninovich, Loren Schoenburg, and Margaret Schoenburg (together, "Defendants") pursuant to the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a et seq. Doc. 1. On June 24, 2009, the parties stipulated to: (1) entry of a preliminary injunction; (2) appointment of Terence J. Long as trustee of the PACA trust ("Trustee");  (3) establishment of a PACA trust account; (4) liquidation of the PACA trust assets; and (5) establishment of a

1

PACA trust claims procedure by which PACA trust creditors could file claims and intervene in the lawsuit. Doc. 48.

Before the court is the Trustee's motion for summary judgment, or alternatively, adjudication of issues against Defendants. Doc. 689. L. Schoenburg and M. Schoenburg (together, "Schoenburgs") filed an opposition (Doc. 699), to which the Trustee replied (Doc. 719). Z&S and Zaninovich did not file oppositions.

Also before the court is the Schoenburgs' motion for summary judgment, or alternatively, adjudication of issues of all claims asserted against them. Doc. 680. Plaintiffs in intervention Aron Margosian, Two Play Properties, LLC, Three Play Farms, Four Play Farms, George Margosian, and Margosian Bros (together, "Intervening Plaintiffs") and the Trustee filed oppositions (Doc. 701 and 702, respectively), to which the Schoenburgs replied (Docs. 715, 716). Intervenor Plaintiff Peters Fruit Farms, Inc. joined in the Trustee's opposition. Doc. 704.

The cross-motions for summary judgment were heard July 25, 2011.

II.   FACTUAL BACKGROUND

A.   Undisputed Facts

1.   Z&S

In December 1985, L. Schoenburg and Zaninovich incorporated Z&S. Schoenburg Statement of Undisputed Material Facts ("SSUMF") ¶ 7. Z&S was a California corporation engaged in the business of

2

marketing and selling produce in interstate commerce. Trustee Statement of Undisputed Facts ("TSUF") ¶ 1. ZM Fresh Special T's ("ZM") was a California corporation engaged in the handling, processing, and packaging of produce marketed by Z&S. TSUF ¶ 2. The United States Department of Agriculture's Agricultural Marketing Service ("USDA AMS") issued Z&S PACA license no. 19860395. TSUF ¶ 3; SSUMF ¶ 60.

On January 24, 1986, the Schoenburgs were issued fifty percent (50%) of the shares of stock in Z&S as joint tenants. SSUMF ¶ 8. Zaninovich received the other fifty percent (50%) of the issued shares. SSUMF ¶ 9. From at least as early as 2006 and continuing through 2009, there were three directors of Z&S: Zaninovich, L. Schoenburg, and M. Schoenburg. [1] TSUF ¶ 4.

In 2008 and 2009, Z&S transferred assets to ZM or to third parties on behalf of ZM. TSUF ¶ 31. The assets that were transferred to ZM were all assets protected by a PACA statutory trust, meaning that the source of the funds transferred from Z&S to ZM was from the sales of perishable agricultural commodities that were subject to the PACA statutory trust. TSUF ¶ 32. The assets transferred directly to ZM or to third-party vendors on behalf of ZM amounted to $4,319,241.23: $3,040,000.00 in direct transfers to ZM and $1,279,241.23 in transfers to third-party

---

[1] The Schoenburgs do not dispute this fact, but contend that it is incomplete. According to the Schoenburgs, they remained listed as directors because Zaninovich "never changed it," and they only signed documents following L. Schoenburg's retirement at Zaninovich's direction.

vendors on behalf of ZM. TSUF ¶ 33. Z&S became insolvent and unable to pay shippers and growers who had valid claims for debts covered by PACA. TSUF ¶ 34.

A court order dated June 24, 2009 ("Order") appointed Terence J. Long as Trustee of the assets of Z&S; required him to identify, take possession and control, and liquidate all assets of Z&S; and authorized him to "bring and prosecute all proper actions for the collection of contract proceeds due, or for the protection of the PACA trust assets, or to recover possession of the PACA trust assets from any person." TSUF ¶ 35. Pursuant to the Order, the Trustee calculated the total amount of the PACA claims after resolutions and settlements of objections and disputes regarding the PACA claims as $7,176,731.94, though this was later reduced to $6,978,264.59 after the Court issued an order invalidating I.G. Fruit, Inc.'s claim for $198,467.35. TSUF ¶ 36. Pursuant to the Order, the Trustee has distributed a total of $3,436,344.84, leaving the amount of $3,541,919.75 still owing to the PACA beneficiaries. TSUF ¶ 37.

### 2. Zaninovich

Zaninovich was the sole shareholder of Z&S during the relevant period. TSUF ¶ 5. Zaninovich owned 50% of the shares in ZM. TSUF ¶ 6. Zaninovich was President of both Z&S and ZM. TSUF ¶ 7. Zaninovich oversaw the operations of Z&S. TSUF ¶ 8. Zaninovich had no other significant independent sources of income other than

from Z&S and considered all of his personal assets, at least to

the extent PACA trust monies were distributed to him, to be PACA

trust assets. TSUF ¶ 9. The records of the USDA AMS show that

Zaninovich was identified as a "Reported Principal" on the PACA

license issued by the USDA AMS. TSUF ¶ 10.

        3.   <u>The Schoenburgs</u>

           a)   <u>Claims against the Schoenburgs</u>

     The operative complaints, complaints-in-intervention,

cross-claims and counterclaims assert the following causes of

action against the Schoenburgs: (1) violation of PACA: failure to

account and pay promptly; (2) breach of fiduciary duty/non-

dischargeability; (3) conversion and/or unlawful retention of

PACA trust assets; (4) violation of PACA: false and/or misleading

statement relating to a PACA transaction; (5) injunctive relief -

to compel turnover and disgorgement of PACA trust assets; (6)

failure to maintain trust assets, and/or pay trust claims/funds;

(7) declaratory relief; (8) enforcement of payments from/

dissipation of trust assets; (9) creation of common fund; (10)

interest and attorneys fees; (11) enforcement of statutory trust

provisions of PACA; (12) injunctive relief - temporary

restraining order; (13) fraudulent conveyance of PACA trust

assets; (14) unjust enrichment; (15) constructive fraud; (16)

constructive trust and accounting; (17) failure to maintain

trust; (18) breach of contract; (19) breach of statutory duties:

Cal. Food & Ag. Code §§ 56611, 56615, 56623, 56620; (20) quiet

title; and (21) unfair business practices under Cal. Bus. & Prof.
Code § 17200, et seq. No other theories of liability are asserted
against the Schoenburgs. SSUMF ¶ 1.

Common among all of the charging documents is the allegation
that the Schoenburgs were either owners, shareholders, members,
partners, officers or directors of one of the named defendant
business entities. SSUMF ¶ 2.

Intervening Plaintiffs' claims against the Schoenburgs are
for quantities of perishable agricultural commodities allegedly
sold and delivered to Defendants throughout the 2006-2007 and
2007-2008 growing seasons for which claimants contend they have
not been paid. SSUMF ¶ 4.

              b)      **Defendant Business Entities Other than Z&S and ZM**

The Schoenburgs played no role in and are not and have never
been owners, shareholders, members, partners, officers or
directors in the following business entity Defendants: Fresno-
Madera Federal Land Bank Association, FLCA, Bank of the West,
Belknap Pump Company, Inc., Jerry E. Robinson dba Sierra Fire
Protection, Two Play Properties, LLC, Two Play Properties
Arizona, LLC, Three Play Farms, Four Play Farms, and Four Play
Ranch. SSUMF ¶ 5. As to these parties, none of whom assert claims
against the Schoenburgs and against whom the Schoenburgs do not
assert claims, these facts are confirmed.

1

c)   <u>Loren Schoenburg</u>

2   L. Schoenburg was one of the original applicants for Z&S'

3   PACA license in 1985. TSUF ¶ 11. L. Schoenburg was listed as a

4   Principal on Z&S' PACA license for the years 2008 and 2009.[2] TSUF

5   ¶ 12. From at least 2006, L. Schoenburg was the Vice-President of

6   Z&S and was never removed from that office.[3] TSUF ¶ 13. From at

7   least 2000, L. Schoenburg was a director of Z&S and was never

8   removed from that office.[4] TSUF ¶ 14.

9   L. Schoenburg, individually, has never received, bought or

10   sold any perishable agricultural commodities from any of the

11   claimants in this action. SSUMF ¶ 47. L. Schoenburg has never

12   entered into a contract, personally, on his own behalf, for the

13   purchase or sale of any perishable agricultural commodities with

14   any of claimants in this action. SSUMF ¶ 48.

15   Starting in 2007 and continuing into 2009, L. Schoenburg

16   picked up Z&S checks in amounts between $6,500.00 and $9,000.00

17   at Z&S' office, cashed them at a bank, and returned the cash to

18   Zaninovich. L. Schoenburg always only cashed one check at each

19   financial institution to avoid the $10,000.00 IRS reporting

20   requirement. TSUF ¶ 15. L. Schoenburg cashed the checks as a

21   favor to Zaninovich pursuant to Zaninovich's request, always

22

23

24

25   [2] The Schoenburgs do not dispute this fact, but provide evidence that L.
Schoenburg did not become aware that he was listed on Z&S's PACA license,

26   notwithstanding his retirement, until April 2009.
[3] The Schoenburgs do not dispute this fact, but do contest the extent of L.

27   Schoenburg's duties and responsibilities following his retirement.
[4] The Schoenburgs do not dispute this fact, but do contest the extent of L.

28   Schoenburg's duties and responsibilities following his retirement.

1    returned the funds to Zaninovich, and never kept any of the

2    funds. SSUMF ¶ 40.

3         From 2000 to 2009, L. Schoenburg was on the payroll of Z&S.[5]

4    TSUF ¶ 16. L. Schoenburg received a credit card that he used for

5    personal expenses that were billed to and paid by Z&S. TSUF ¶ 17.

6    L. Schoenburg, as an officer of Z&S, executed loan documents in

7    2007 and 2008 on behalf of Z&S that purported to make Z&S a

8    guarantor for loans made by the bank to ZM. TSUF ¶ 19.

9         For a month each summer season in 2007 and 2008, L.

10   Schoenburg traveled to Nogales, Arizona for Z&S to inspect grapes

11   crossing the border. SSUMF ¶¶ 42, 43. While L. Schoenburg's

12   expenses were paid, he received no significant compensation for

13   his limited inspection services for Z&S. SSUMF ¶ 44.

14

15        From 2000 to 2009, L. Schoenburg never asked for any

16   financial reports for Z&S. TSUF ¶ 20. L. Schoenburg did not

17   discover that Z&S was in financial trouble until April 2009. TSUF

18   ¶ 21. L. Schoenburg was not involved with the operations of Z&S

19   following his retirement in 1999. TSUF ¶ 22.

20

21        While L. Schoenburg was listed as a director of ZM, he was

22   unaware of such status and neither of the Schoenburgs was

23   actually involved in any way, shape or form with the actual

24   management or operation of ZM. SSUMF ¶ 6. Zaninovich did not

25

26   _____

27   [5] The Schoenburgs do not dispute this fact, but provide evidence that
     continued health insurance was a component of L. Schoenburg's retirement
     package, and that the Schoenburgs received paychecks at minimum wage to
28   satisfy the minimum hours required under Z&S's health insurance policy.

consult with L. Schoenburg regarding any of ZM's activities. SSUMF ¶ 26. L. Schoenburg was never involved with ZM, and did not know whether ZM ever received any monies from Z&S. TSUF ¶ 22.

Following L. Schoenburg's retirement sometime between 1999 and 2001[6], M. Schoenburg gave a Mercedes sedan, which the Schoenburgs owned outright, to Aron Margosian for his wife, pursuant to Zaninovich's request. In exchange, M. Schoenburg received a Mercedes convertible from Zaninovich, which had been leased by Z&S. SSUMF ¶ 16. After Zaninovich explained that he could no longer make the payments on the lease, the Schoenburgs returned the Mercedes convertible to Z&S. SSUMF ¶ 17. Zaninovich also purchased an Acura from the Schoenburgs which L. Schoenburg bought following his retirement. SSUMF ¶ 18. L. Schoenburg took the money he received from Zaninovich in exchange for his Acura and bought a Mercedes SUV. SSUMF ¶ 19. L. Schoenburg kept the Mercedes SUV until Zaninovich requested it in exchange for a BMW, which Z&S leased. SSUMF ¶ 20. When the lease on the BMW came to an end, Zaninovich replaced it with a Range Rover, which Z&S leased and L. Schoenburg eventually purchased. SSUMF ¶ 21.

L. Schoenburg does not claim any interest in the property located at 39303 Road 56 in Dinuba, California 93618. SSUMF ¶ 58.

    d)   Margaret Schoenburg

From at least 2000 and through 2009, M. Schoenburg was both

---

[6] The degree of L. Schoenburg's retirement is disputed. See Disputed Facts, below.

a director and the Secretary/Treasurer of Z&S. TSUF ¶ 24.
In 2008 and 2009, M. Schoenburg cashed at least thirteen Z&S
checks at the request of L. Schoenburg, who Zaninovich had asked
to cash the checks. TSUF ¶ 25. In 2008 and 2009, M. Schoenburg
received a salary from Z&S.[7] TSUF ¶ 26. M. Schoenburg received a
credit card that was billed to Z&S.[8] TSUF ¶ 27. M. Schoenburg
received a Mercedes-Benz convertible that was leased by Z&S. TSUF
¶ 28. M. Schoenburg, as an officer of Z&S, executed loan
documents in 2007 and 2008 on behalf of Z&S that purported to
make Z&S a guarantor for loans made by the bank to ZM. TSUF ¶ 29.

M. Schoenburg, individually, has never received, bought or
sold any perishable agricultural commodities from any of the
claimants in this action. SSUMF ¶ 47. M. Schoenburg has never
entered into a contract, personally, on her own behalf, for the
purchase or sale of any perishable agricultural commodities with
any of the claimants in this action. SSUMF ¶ 48.

M. Schoenburg was never involved with ZM, was not involved
in the management, operations or day-to-day activities of Z&S,
and had no knowledge of whether, and in what amounts if any, of
any moneys received by ZM from Z&S. TSUF ¶ 30.

---

[7] The Schoenburgs do not dispute this fact, but provide evidence that
continued health insurance was a component of L. Schoenburg's retirement
package, and that the Schoenburgs received paychecks at minimum wage to
satisfy the minimum hours required under Z&S' health insurance policy.
[8] The Schoenburgs do not dispute this fact, but provide evidence that the
credit card was a component of L. Schoenburg's retirement package. No evidence
has been presented as to the amount of the credit card charges.

M. Schoenburg does not claim any interest in the property located at 39303 Road 56 in Dinuba, California 93618. SSUMF ¶ 58.

B.    Disputed Facts

        1.    Claims against the Schoenburgs

The Schoenburgs contend that, except for the claims by Intervening Plaintiffs, all of the other claimants' claims asserted against the Schoenburgs are for quantities of perishable agricultural commodities allegedly sold and delivered to Defendants after January 1, 2008 for which claimants contend they have not been paid. SSUMF ¶ 3. The Trustee rejoins that the claims asserted against the Schoenburgs are broader than just violations of PACA for failure to pay for perishable agricultural commodities.

        2.    ZM Fresh Special T's

The Schoenburgs contend that as to ZM, while L. Schoenburg was listed as a director, he was unaware that he held that position and neither of the Schoenburgs were actually involved in any way, shape or form with the actual management or operation of ZM. SSUMF ¶ 6. The Schoenburgs contend that Zaninovich did not consult with L. Schoenburg regarding any of the activities that occurred with ZM. SSUMF ¶ 26.

The Trustee rejoins that: (1) L. Schoenburg, as director and vice-president of Z&S, authorized Z&S to guarantee loans provided to ZM; and (2) M. Schoenburg, as director and secretary/treasurer of Z&S, authorized Z&S to guarantee loans provided to ZM.

11

1

### 3.   Loren Schoenburg

2       The Schoenburgs contend that sometime prior to 2001, L.

3  Schoenburg agreed to retire from his position with the company

4  upon being paid an unspecified sum by Z&S (SSUMF ¶ 12), and that

5  L. Schoenburg retired sometime prior to 2001 (SSUMF ¶ 13). The

6  Schoenburgs argue that unknown to L. Schoenburg, Z&S continued to

7  list him as a director and vice president of Z&S on its PACA

8  license after his retirement. SSUMF ¶ 22. The Schoenburgs argue

9  that L. Schoenburg did not become aware until April 2009 that he

10  was listed on Z&S's PACA license, notwithstanding his retirement.

11  SSUMF ¶ 23.

12       The Schoenburgs assert that after L. Schoenburg's retirement

13
14  from Z&S:

15

16  • He relinquished all authority, power and control so that

17    neither of the Schoenburgs had the ability to or exercised

18    any duties and/or responsibilities as director, officer

19    and/or employee of Z&S, other than signing papers as

20    directed by Zaninovich, and L. Schoenburg's limited stint as

21    an inspector in Nogales for a month each year in 2007 and

22    2008. SSUMF ¶ 24.

23

24  • The only documents the Schoenburgs signed, were signed at

25    Zaninovich's direction. SSUMF ¶ 25.

26  • L. Schoenburg did not have or exercise any authority or

27    control over purchases, sales or payment for perishable

28
                              12

agricultural commodities or any other financial matters involving Z&S. SSUMF ¶ 27.

- He was not responsible for and did not make any decisions in the day-to-day operations of the company. SSUMF ¶ 28.

- L. Schoenburg has not received, bought nor sold perishable agricultural commodities for Z&S at any time since his retirement (sometime between 1999 and 2001). SSUMF ¶ 29.

- Neither of the Schoenburgs approved or had access to the financial records of Z&S. SSUMF ¶ 30.

- The Schoenburgs made no representations regarding the amounts contained in grower accounts at Z&S. SSUMF ¶ 31.

- L. Schoenburg did not have any access to Z&S's banking dealings. SSUMF ¶ 32.

- L. Schoenburg did not have any access to Z&S's books and records. SSUMF ¶ 33.

- L. Schoenburg did not have or exercise any responsibility or duties as an officer of Z&S, but Z&S continued to identify him as an officer of Z&S because Zaninovich understood more than one officer was needed to be a corporation. SSUMF ¶ 34.

- All management decisions at Z&S were made by Zaninovich, such that Zaninovich was in total control of the business. SSUMF ¶ 39.

- Neither of the Schoenburgs had any authority to and did not sign any checks that drew on any accounts belonging to Z&S. SSUMF ¶ 41.

- L. Schoenburg never had or exercised any control over the perishable agricultural commodities at Z&S or the proceeds realized from their sale. SSUMF ¶ 49.

- The Schoenburgs had no knowledge of how the proceeds realized from the sale of perishable agricultural commodities at Z&S were being handled, so that neither had any knowledge that such proceeds were not being forwarded to claimants. SSUMF ¶ 51.

- L. Schoenburg's only employment with Z&S since his departure occurred in 2007 and 2008, when he traveled to Nogales to inspect grapes crossing the border for Z&S during the summer seasons. SSUMF ¶ 42. L. Schoenburg did not have any authority or control over the operations of Z&S while he worked as an inspector for Z&S in Nogales in the summers of 2007 and 2008.

- L. Schoenburg has not worked for Z&S since 2008. SSUMF ¶ 45.

As part of L. Schoenburg's retirement, the Schoenburgs received health insurance and credit cards from Z&S. SSUMF ¶ 14. The Schoenburgs contend that in order for the Schoenburgs to receive the health insurance benefits that were part of L. Schoenburg's retirement package, it was their understanding that

14

they were listed as employees on the payroll of Z&S and received pay checks at minimum wage for the minimum number of hours required under Z&S' health insurance. SSUMF ¶ 15.

The Trustee rejoins that the degree of L. Schoenburg's retirement is disputed since, among other facts, he: (1) never retired from his position as a director of Z&S; (2) never retired from his position as vice-president of Z&S; (3) continued to be a salaried employee on the payroll of Z&S and to receive employment related benefits; (4) was listed as a principal of Z&S on its PACA license during relevant time periods; and (5) in his capacity as an officer of Z&S, authorized Z&S to guarantee loans provided to ZM. Intervening Plaintiffs add that starting in 2007 and continuing into 2009, L. Schoenburg picked up Z&S checks, in amounts between $6,500.00 and $9,000.00, at Z&S' office, cashed them at a bank, and returned the cash to Zaninovich.

The Trustee further contends that L. Schoenburg had constructive and actual knowledge of being listed as a director and vice president of Z&S on its PACA license because the license is a matter of public record, he was an original applicant for and principal of the license, and continued to be listed as a director and vice president on the license in 2008 and 2009.

### 4. Margaret Schoenburg

Pointing to Z&S's Articles of Incorporation and M. Schoenburg's deposition, the Trustee contends that M. Schoenburg

15

was one of the incorporators of Z&S. TSUF ¶ 23. Pointing to the
Schoenburgs' declarations and depositions and Zaninovich's
deposition, the Schoenburgs contend that L. Schoenburg and
Zaninovich actually formed Z&S and that M. Schoenburg was not
involved in its formation.

The degree of M. Schoenburg's duties and responsibilities
with respect to Z&S is in dispute. The Schoenburgs contend that:
(1) M. Schoenburg never had any duties or responsibilities at
Z&S, other than signing papers when Zaninovich requested or
directed (SSUMF ¶ 35); (2) M. Schoenburg has neither received,
bought nor sold perishable agricultural commodities for Z&S at
any time (SSUMF ¶ 36); (3) M. Schoenburg was never involved in
running the operations of Z&S (SSUMF ¶ 37); (4) M. Schoenburg did
not have or exercise any responsibility or duties as an officer
of Z&S, but was identified as such because it was Zaninovich's
understanding that more than two people were needed to be
officers to be a corporation (SSUMF ¶ 38); (5) M. Schoenburg
never had or exercised any control over the perishable
agricultural commodities at Z&S or the proceeds realized from
their sale (SSUMF ¶ 50); and (6) M. Schoenburg never had any
authority or control over purchases, sales or payment for
perishable agricultural commodities or any other financial
matters involving Z&S (SSUMF ¶ 59).

The Trustee rejoins that M. Schoenberg, among other facts:

16

(1) was both a director and secretary/treasurer of Z&S; (2) continued to be a salaried employee of Z&S; and (3) in her capacity as a loan officer, authorized Z&S to guarantee loans provided to ZM. Intervening Plaintiffs add that: (1) in 2008 and 2009, M. Schoenburg cashed at least thirteen Z&S checks at the request of her husband L. Schoenburg, who was himself asked by Zaninovich to cash checks; and (2) M. Schoenburg received a credit card that was billed to Z&S.

### III. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes are not considered. *Anderson v.*

17

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

If the moving party would bear the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.*

If the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the moving party does not meet its burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence is considered in

deciding a motion for summary judgment. *Soremekun*, 509 F.3d at 984. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

### IV.  TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

The Trustee moves for summary judgment or, in the alternative, summary adjudication against Z&S, Zaninovich, and the Schoenburgs. Doc. 689. The Schoenburgs oppose the motion; Z&S and Zaninovich did not file oppositions.

**A.  Count II: Enforcement of Statutory Provisions of PACA; Count III: Violation of PACA**

**1.  PACA**

PACA was enacted in 1930 to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. *Sunkist Growers v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). PACA requires all brokers and dealers in perishable agricultural commodities to obtain licenses from the Secretary of Agriculture. *Id.*; 7 U.S.C. §§ 499c, 499d. "Dealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce." *Sunkist Growers*, 104 F.3d at 282; 7 U.S.C. § 499b(4).

Congress amended PACA in 1984 "'to remedy [the] burden on commerce in perishable agricultural commodities and to protect the public interest' caused by accounts receivable financing arrangements that 'encumber or give lenders a security interest'

19

in the perishable agricultural commodities superior to the growers." *Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1270 (9th Cir. 2001) (quoting 7 U.S.C. § 499e(c)(1)). Section 499e(c) created the PACA trust:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

"Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). Dissipation of trust assets, defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions", is unlawful. *Id*; 7 C.F.R. § 46.46(a)(2). Failure to maintain the trust or make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4).

1

2.   **Z&S**

2      The undisputed facts establish that Z&S was subject to PACA.

3  Z&S was a California corporation that was engaged in the business

4  of marketing and selling produce in interstate commerce. TSUF ¶

5  1. Z&S was therefore a "dealer" within the meaning of PACA. 7

6  U.S.C. § 499a(b)(6) (defining a "dealer" as "any person engaged

7  in the business of buying and selling in wholesale . . . any

8  perishable agricultural commodity in interstate or foreign

9  commerce. . .."). The USDA AMS issued Z&S PACA license no.

10  19860395. TSUF ¶ 3; SSUMF ¶ 60.

11      The undisputed facts establish that Z&S violated PACA. In

12  2008 and 2009, Z&S transferred assets to ZM or to third parties

13  on behalf of ZM. TSUF ¶ 31. The assets that were transferred to

14  ZM were all assets protected by a PACA statutory trust, meaning

15  that the source of the funds transferred from Z&S to ZM was from

16  the sales of perishable agricultural commodities that were

17  subject to the PACA statutory trust. TSUF ¶ 32. The assets

18  transferred directly to ZM or to third-party vendors on behalf of

19  ZM amounted to $4,319,241.23: $3,040,000.00 in direct transfers

20  to ZM and $1,279,241.23 in transfers to third-party vendors on

21  behalf of ZM. TSUF ¶ 33. These transfers from Z&S to ZM

22  dissipated trust assets, which is unlawful under PACA. 7 C.F.R. §

23  46.46(a)(2), (d)(1). Z&S became insolvent and unable to pay

24  shippers and growers who had valid claims for debts covered by

25

26

27

28

PACA. TSUF ¶ 34. Z&S's failure to maintain its PACA trust and remit full and prompt payment to the trust beneficiaries violated PACA. 7 U.S.C. § 499b(4).

An Order appointed Terence J. Long as Trustee of the assets of Z&S; required him to identify, take possession and control, and liquidate all assets of Z&S; and authorized him to "bring and prosecute all proper actions for the collection of contract proceeds due, or for the protection of the PACA trust assets, or to recover possession of the PACA trust assets from any person." TSUF ¶ 35. Pursuant to the Order, the Trustee calculated the total amount of the PACA claims after resolutions and settlements of objections and disputes regarding the PACA claims as $7,176,731.94, although this was later reduced to $6,978,264.59 after the Court issued an order invalidating I.G. Fruit, Inc.'s claim for $198,467.35. TSUF ¶ 36. Pursuant to the Order, the Trustee has distributed a total of $3,436,344.84, leaving the net amount of $3,541,919.75 still owing to PACA beneficiaries. TSUF ¶ 37. Z&S is liable under PACA for the unpaid $3,541,919.75 due to PACA trust beneficiaries. *See* 7 U.S.C. § 499e(a).

The Trustee's motion for summary judgment against Z&S as to Counts II and III is GRANTED in the amount of $3,541,919.75.

### 3. Zaninovich

In *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997), the Ninth Circuit explained that PACA liability

attaches first to the licensed seller of produce. If the seller's assets are "insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id.* (quoting *Shepard v. K.B. Fruit & Vegetable*, 868 F.Supp. 703, 706 (E.D. Pa.)). "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers*, 104 F.3d at 283. "A court considering the liability of the individual may look at 'the closely-held nature of the corporation, the individual's active management role' and any evidence of the individual's acting for the corporation." *Id*.

The undisputed facts show that Zaninovich was in a position to, and did in fact, control PACA trust assets. Zaninovich was one of three directors of Z&S, its sole shareholder, and its president. TSUF ¶¶ 4, 5, 7. Zaninovich oversaw the operations of Z&S. TSUF ¶ 8. Zaninovich owned fifty percent (50%) of the shares in ZM and served as ZM's president. TSUF ¶¶ 6, 7. Zaninovich had no other significant independent sources of income other than from Z&S and considered all of his personal assets, at least to the extent PACA trust monies were distributed to him, to be PACA trust assets. TSUF ¶ 9. The records of the USDA AMS show that Zaninovich was identified as a "Reported Principal" on the PACA

license issued by the USDA AMS. TSUF ¶ 10. As Z&S's director, president, sole shareholder, and person who oversaw Z&S's day to day operations, Zaninovich was in the position to, and did control PACA trust assets.

There is no issue that Zaninovich breached his fiduciary duty to preserve the PACA trust assets. While Zaninovich was in control of Z&S and its PACA trust assets, Z&S transferred $4,319,241.23 out of Z&S's PACA trust to ZM. TSUF ¶ 33. Z&S became insolvent and unable to pay shippers and growers who had valid claims for debts covered by PACA. TSUF ¶ 34. Zaninovich breached his fiduciary duty to preserve Z&S's PACA trust assets, and is personally liable to PACA beneficiaries for $3,541,919.75.

The Trustee's motion for summary judgment against Zaninovich as to Counts II and III is GRANTED.

          4.    The Schoenburgs

               a)    Legal Standard for Secondary PACA Liability

The Trustee and the Schoenburgs disagree on the correct legal standard governing secondary PACA liability. Despite the Ninth Circuit's articulation of the applicable standard in *Sunkist Growers*, 104 F.3d at 283, the Trustee and the Schoenburgs ask the court to follow decisions from district and appellate courts outside the Ninth Circuit.

The Trustee argues that PACA imposes individual liability not only where an individual actually controls PACA trust assets, but instead where an individual fails to exercise oversight of a

PACA broker/dealer. The Trustee cites three cases to support this position: (1) *Shepard, Inc. v. K.B. Fruit & Vegetable, Inc.*, 868 F.Supp. 703 (E.D. Pa. 1994), a non-precedential district court case which the Ninth Circuit cited in *Sunkist Growers*; (2) a Fifth Circuit case, *Golman-Hayden Co. v. Fresh Source Produce*, *Inc.*, 217 F.3d 348 (5th Cir. 2000), which follows *Sunkist Growers*; and (3) this court's prior decision in *Grimmway Enters. v. PIC Fresh Global, Inc.*, 548 F.Supp.2d 840 (E.D. Cal. 2008), which cites *Golman-Hayden* and *Sunkist Growers*.

In *Shepard*, 868 F.Supp. at 704, three defendants, officers, directors and shareholders of a PACA dealer claimed that they did not have control over the PACA dealer because one of the shareholder's nephews was the "true operator" of the business. Contrary to the Trustee's position, the *Shepard* court explained that individuals "are not secondarily liable merely because they served as corporate officers or shareholders." *Id.* at 706. Instead:

> First, we must consider whether the [Defendants'] involvement with [the company] was sufficient to establish legal responsibility. Second, we must determine whether the [Defendants], in allowing [the nephew] to use their corporation without any appreciable oversight, breached a fiduciary duty owed to the PACA creditors.

*Id*. *Shepard* found defendants' involvement with the company sufficient to impose PACA liability because defendants: (1) set up the corporation; (2) owned company stock; (3) exercised legal control as the company's officers and directors; (4) were

signatories to the company's commercial banking agreement; (5)

applied for the company's business tax identification number; (6)

paid rent after the nephew abandoned the company; and (7) stored

some of its produce in the company's stalls. *Id.* Only after the

*Shepard* court concluded that defendants could be legally

responsible under PACA did it address whether defendant breached

a fiduciary duty to PACA creditors. This inquiry is consistent

with *Sunkist Growers.*

Similarly, in *Grimmway,* 548 F.Supp.2d at 849, a defendant

could not be held secondarily liable under PACA merely because he

served as a corporate officer or shareholder. The following

factors were weighed to determine whether the defendant's

involvement with the company was more than passive to justify

exposure to legal responsibility under PACA: (1) the PACA license

listed defendant as the company's reported principal; (2)

defendant admitted he was the principal, president, director and

shareholder of the company; (3) defendant admitted that he

controlled the company's operations and financial dealings; (4)

Pamela Terry, plaintiff's accounts receivable supervisor for

credit and collections, stated in her declaration that she

frequently spoke with defendant regarding the company's business

operations and on several occasions to determine when the company

would pay its outstanding invoices; and (5) Ms. Terry was

informed that defendant was the person who decided if and when

plaintiff would receive payment. *Id.* at 849-850. *Grimmway* cited
and followed *Sunkist Growers*. *See id.* at 848.

In *Golman-Hayden*, the Fifth Circuit followed *Sunkist
Growers*' holding that "individual shareholders, officers, or
directors of a corporation who are in a position to control trust
assets, and who breach their fiduciary duty to preserve those
assets, may be held liable under PACA." *Golman-Hayden Co.*, 217
F.3d at 351. *Golman-Hayden* imposed liability on the sole
shareholder of the company: "As the sole shareholder, he
manifestly had absolute control of the corporation." *Id.*

The Schoenburgs argue that personal liability attaches only
where an individual is actually in a position of control, not
simply by the corporate title the individual holds. The
Schoenburgs cite a Third Circuit case, *Bear Mountain Orchards,
Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 169 (3rd Cir. 2010):

> Whether Jacqueline Fleisher is individually liable under
> PACA turns not on whether she nominally held an officer (or,
> if argued, director) position, nor even the size of her
> shareholding, but whether she had the authority to
> direct the control of (i.e., manage) PACA assets held in
> trust for the producers. If so, she is secondarily liable
> for breaching the duty to preserve the PACA trust. If not,
> then only the corporation itself and Mr. Fleisher were
> responsible for the breach and therefore liable for the
> shortfall under PACA. The test for individual liability thus
> continues un-brightlined, as each case depends on facts
> found by the trier at trial (or the District Court at
> summary judgment when there is no genuine issue of material
> fact).

*Bear Mountain* concluded that a wife who was listed as a fifty
percent (50%) shareholder and compensated officer on the

company's tax returns, signed corporate checks at the direction
of her husband, but was not involved in any major business
decisions or involved in the day-to-day management, and did not
have control of the trust assets. *Id.* at 174.

The Trustee and the Schoenburgs cite cases that all follow
*Sunkist Growers.* A district court in the Ninth Circuit must
follow that circuit's precedent. *Hart v. Massanari*, 266 F.3d
1155, 1172 (9th Cir. 2001). The applicable *Sunkist Growers*
standard for imposing secondary PACA liability is: "individual
shareholders, officers, or directors of a corporation [1] who are
in a position to control PACA trust assets, and [2] who breach
their fiduciary duty to preserve those assets, may be held
personally liable under the Act." *Sunkist Growers*, 104 F.3d at
283. Contrary to the Trustee's argument, an individual's title,
even officer, does not alone establish secondary liability.
*Shepard*, 868 F.Supp. at 706; *Grimmway,* 548 F.Supp.2d at 849.
Rather, "[a] court considering the liability of [an] individual
may look at 'the closely-held nature of the corporation, the
individual's active management role' and any evidence of the
individual's acting for the corporation." *Sunkist Growers*, 104
F.3d at 283.

b)    Position to Control PACA Trust Assets

It is a disputed material issue of fact whether the
Schoenburgs were in a position to control PACA trust assets.

The Trustee contends that from at least as early as 2006 and continuing through 2009, there were three directors of Z&S: Zaninovich, L. Schoenburg, and M. Schoenburg. TSUF ¶ 4. L. Schoenburg was one of the original applicants for Z&S' PACA license in 1985. TSUF ¶ 11. L. Schoenburg was listed as a Principal on Z&S' PACA license for the years 2008 and 2009. TSUF ¶ 12. From at least 2006, L. Schoenburg was the Vice-President of Z&S and was never removed from that office. TSUF ¶ 13. From at least 2000, L. Schoenburg was a director of Z&S and was never removed from that office. TSUF ¶ 14. Starting in 2007 and continuing into 2009, L. Schoenburg picked up Z&S checks in amounts between $6,500.00 and $9,000.00 at Z&S' office, cashed them at a bank, and returned the cash to Zaninovich. L. Schoenburg always only cashed one check at each financial institution to avoid the $10,000.00 IRS currency transaction reporting requirement. TSUF ¶ 15. From 2000 to 2009, L. Schoenburg was on the payroll of Z&S. TSUF ¶ 16. L. Schoenburg received a credit card that he used for personal expenses that were billed to Z&S. TSUF ¶ 17. L. Schoenburg, as an officer of Z&S, signed loan documents in 2007 and 2008 on behalf of Z&S that purported to make Z&S a guarantor for loans made by the bank to ZM. TSUF ¶ 19.

The Trustee also provides evidence that from at least 2000 and through 2009, M. Schoenburg was both a director and the

Secretary/Treasurer of Z&S. TSUF ¶ 24. In 2008 and 2009, M. Schoenburg cashed at least thirteen Z&S checks at the request of her husband L. Schoenburg, who, in turn was cashing the checks for Zaninovich. TSUF ¶ 25. In 2008 and 2009, M. Schoenburg received a salary from Z&S. TSUF ¶ 26. M. Schoenburg received a credit card that was billed to Z&S. TSUF ¶ 27. M. Schoenburg received a Mercedes-Benz convertible that was leased by Z&S. TSUF ¶ 28. M. Schoenburg, as an officer of Z&S, signed loan documents in 2007 and 2008 on behalf of Z&S that made Z&S a guarantor for bank loans to ZM. TSUF ¶ 29.

The Schoenburgs contend that they were not shareholders in either Z&S or ZM at the time of the alleged wrongdoing. Rather, they were only "nominal" officers and directors, and Zaninovich, Z&S' sole shareholder, had complete and total control of Z&S and the PACA trust assets. The Schoenburgs submit evidence that after L. Schoenburg's retirement from Z&S (sometime between 1999 and 2001): (1) L. Schoenburg relinquished all authority, power and control so that neither of the Schoenburgs had the ability to nor exercised any duties and/or responsibilities as director, officer and/or employee of Z&S, other than signing papers as directed, and L. Schoenburg's limited stint as a grape inspector in Nogales for a month each year in 2007 and 2008 (SSUMF ¶ 24); (3) The only documents the Schoenburgs signed, were signed at the direction of Zaninovich (SSUMF ¶ 25); (4) L. Schoenburg did not have nor did

he exercise any authority or control over purchases, sales or

payment for perishable agricultural commodities or any other

financial matters involving Z&S (SSUMF ¶ 27); (5) L. Schoenburg

was not responsible for and did not make any decisions in the

day-to-day operations of the company (SSUMF ¶ 28); (6) L.

Schoenburg has neither received, bought nor sold perishable

agricultural commodities for Z&S at any time since his retirement

(SSUMF ¶ 29); (7) neither of the Schoenburgs approved or had

access to the financial records of Z&S (SSUMF ¶ 30); (8) the

Schoenburgs made no representations regarding the amounts

contained in grower accounts at Z&S (SSUMF ¶ 31); (9) L.

Schoenburg did not have any access to Z&S's banking dealings

(SSUMF ¶ 32); (10) L. Schoenburg did not have any access to Z&S'

books and records (SSUMF ¶ 33); (11) L. Schoenburg did not have

or exercise any responsibility or duties as an officer of Z&S,

but Z&S continued to identify him as an officer of Z&S because

Zaninovich understood more than one officer was needed to be a

corporation (SSUMF ¶ 34); (12) all management decisions at Z&S

were made by Zaninovich (SSUMF ¶ 39); (13) neither of the

Schoenburgs had any authority to, and did not, sign any checks

that drew on any accounts belonging to Z&S (SSUMF ¶ 41); (14) L.

Schoenburg never had or exercised any control over the perishable

agricultural commodities at Z&S or the proceeds realized from

their sale (SSUMF ¶ 49); and (15) the Schoenburgs had no

knowledge of how the proceeds realized from the sale of perishable agricultural commodities at Z&S were being handled (SSUMF ¶ 51).

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Based on the Schoenburgs' assertion of Zaninovich's dominance and control over Z&S operations and the Schoenburgs' minimal involvement, knowledge of the business' operations, and lack of day-to-day participation in the business of Z&S, the Schoenburgs have presented enough evidence to create a genuine issue of fact for trial. Drawing all inferences in favor of the Schoenburgs, a reasonable trier of fact could conclude that the Schoenburgs were not in a position to control PACA trust assets during the relevant time period.

The Trustee's motion for summary judgment against the Schoenburgs as to Counts II and III is DENIED.

B.    Count VII: Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty, Plaintiffs must show: (1) the existence of a fiduciary relationship; (2) breach of that fiduciary relationship; and (3) damage proximately caused by that breach. *Roberts v. Lomanto*, 112 Cal.App.4th 1553, 1562 (2003).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Zaninovich

There is no triable issue of fact that Zaninovich breached his fiduciary duty to PACA. Zaninovich had control over the PACA trust assets, and therefore had a fiduciary relationship to PACA trust beneficiaries. Zaninovich breached his fiduciary duty by transferring and dissipating $4,319,241.23 of Z&S assets to ZM or to third parties on behalf of ZM. TSUF ¶ 33. As a result of the transfers, Z&S became insolvent and unable to pay shippers and growers who had valid claims for debts covered by PACA. TSUF ¶ 34. Z&S still owes the PACA trust beneficiaries $3,541,919.75 by Z&S. TSUF ¶ 37. There is no issue of fact that Zaninovich's breach proximately caused this damage.

The Trustee's motion for summary judgment against Zaninovich as to Count VII is GRANTED.

### 2.   The Schoenburgs

The threshold issue precluding summary judgment against the Schoenburgs is whether they owed claimants a fiduciary duty. A fiduciary relationship is:

> any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Such a relation[ship] ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.

*Wolf v. Super. Ct.*, 107 Cal.App.4[th] 25, 29 (2003) (quoting *Herbert v. Lankershim*, 9 Cal.2d 409, 483 (1937)).

The Trustee contends that the Schoenburgs owed claimants a fiduciary duty under PACA. "An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act." *Sunkist Growers*, 104 F.3d at 283. There are material issues of fact whether the Schoenburgs were in the position to know of, access, and/or control the trust assets. It cannot be decided on summary judgment whether the Schoenburgs had a fiduciary duty to PACA trust beneficiaries.

The Trustee's motion for summary judgment against the Schoenburgs as to Count VII is DENIED.

C.   <u>Count VIII: Conversion</u>

In California, the tort of conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages. *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 907 (9th Cir. 1992); *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).

1.   <u>Zaninovich</u>

There is no triable issue of fact that Zaninovich converted PACA assets. Pursuant to the court's Order, the Trustee calculated the total amount of the PACA claims after resolutions

34

and settlements of objections and disputes regarding the PACA

claims: $6,978,264.59. TSUF ¶ 36. Zaninovich transferred

$4,319,241.23 of Z&S assets to ZM or to third parties on behalf

of ZM. TSUF ¶ 33. As a result of the transfers, Z&S became

insolvent and unable to pay shippers and growers who had valid

claims for debts covered by PACA. TSUF ¶ 34. The PACA

beneficiaries are still owed $3,541,919.75. TSUF ¶ 37.

The Trustee's motion for summary judgment against Zaninovich

as to Count VIII is GRANTED.

2.   The Schoenburgs

It is undisputed that PACA beneficiaries have an ownership

or right to $3,541,919.75, which remains unpaid. TSUF ¶ 37. There

is insufficient evidence, however, that the Schoenburgs

wrongfully disposed of the PACA trust assets. The Trustee

contends that the Schoenburgs as individuals were in a position

to control the PACA trust assets, and were responsible for the

diversion of Z&S assets to ZM. The analysis is the same as to

whether the Schoenburgs were in a position to control the PACA

trust assets, which is a material issue of disputed fact.

The Trustee's motion for summary judgment against the

Schoenburgs as to Count VIII is DENIED.

V.   THE SCHOENBURGS' MOTION FOR SUMMARY JUDGMENT

The Schoenburgs move for summary judgment on all claims

asserted against them, including by the following pleadings:

1.  Complaint-in-Intervention by Joe W. Russell dba Joe Russell

35

1    Farms filed on July 9, 2009 (Doc. 57);

2    2. Complaint-in-Intervention by Peters Fresh Fruit, Inc. filed
        on July 9, 2009 (Doc. 61);
3
     3. Complaint-in-Intervention by Visalia Produce Sales, Inc.
4       dba Produce Source filed on July 10, 2009 (Doc. 64);

5    4. Complaint-in-Intervention by David Blayney filed on July 9,
        2009 (Doc. 66);
6
     5. Complaint-in-Intervention by Del Monte filed on July 10,
7       2009 (Doc. 68);

8    6. Complaint-in-Intervention by Rick Dreo filed on July 10,
        2009 (Doc. 69);
9
     7. CII by Fourplay Farms filed on July 13, 2009 (Doc. No. 72);
10
     8. Complaint-in-Intervention by Aron Margosian filed on July
11      13, 2009 (Doc. 74);

12   9. Complaint-in-Intervention by George Margosian filed on July
        13, 2009 (Doc. 75);
13
     10. Complaint-in-Intervention by Margosian Bros. filed on July
14      13, 2009 (Doc. 76);

15   11. Complaint-in-Intervention filed by Three Play Farms filed
        on July 13, 2009 (Doc. 78);
16
     12. Amended Complaint by Onions Etc., Inc., Duda Farm Fresh
17      Foods, Inc., Cecelia Packing Corporation, John A. Clark and
        Addison W. Clark, Jr. dba Clark Farms, Rio Vista, Ltd. dba
18      Guimarra of Nogales, Guimarra Farms, Inc., Guimarra
        International Marketing, APB, Inc. dba Tavilla Sales
19      Company of Los Angeles, and Calavo Growers, Inc. filed on
        July 13, 2009 (Doc. 91);
20
     13. Complaint-in-Intervention by Wildwood Produce Sales, Inc.
21      filed on July 13, 2009 (Doc. 92);

22   14. Complaint-in-Intervention by Larry Gardner filed on July
        13, 2009 (Doc. 95);
23
     15. Complaint-in-Intervention by I.G. Fruit, Inc. filed on July
24      13, 2009 (Doc. 100);

25   16. Complaint-in-Intervention by Mark L. Pascoe filed on July
        13, 2009 (Doc. 109);
26
     17. Complaint-in-Intervention by Jewel Marketing &
27      Agribusiness, LLC dba Crown Jewels Marketing, LLC filed on
        July 13, 2009 (Doc. 111);

28
                                    36

18. Complaint-in-Intervention by Jacob Hiebert filed on July 13, 2009 (Doc. 124);

19. Complaint-in-Intervention by William Cotner filed on July 13, 2009 (Doc. 130);

20. Complaint by Dandrea Produce filed on July 13, 2009 (Doc. 148);

21. Complaint-in-Intervention by Golden Star Citrus, Inc., Epicure Trading, Inc., Fresno Produce, Inc., Chamberlain Distributing, Inc. J-C Distributing, Inc., Sundale Sales, Inc., Seald Sweet, LLC, Seald Sweet West International, Inc., Richard Cotrell Marketing, Inc, Pandol Brothers, Inc, Big Chuy Distributors and Sons, Inc., Booth Ranches, LLC, Kirschenman Enterprises Sales, Divine Flavor, LLC, CH Distributing, LLC, Wilson Produce, LLC, R&C Berndt, Inc., Meyer, LLC, Pro Citrus Network, Inc., Gemco, Inc.,King Fresh Produce, LLC, Premium Product Distributors, Inc., Mikaelian and Sons, Inc., JP Produce, Inc., Fisher Capespan USA, LLC, Sunriver Trading Company Limited, Cal Fresco, LLC, Comercial Alfonso Eyzaguirre Y CIA, LTDA, Sunny Cove Citrus, LLC, Shipley Sales Service, Zimmerman Farms, Inc., Salvadore Romero, The Fruit Branch, Inc., Raul Alvarez, Ramon Rios, Sunfed Produce, LLC, Ciruli Bros., LLC, William H. Kopke, Jr., Inc., Castro Produce, LLC, Kaweah Avenue Properties, LLC and Maria Alvarado filed on July 13, 2009 (Doc. 157);

22. First Amended Complaint-in-Intervention by Frank Logoluso Farms filed on July 17, 2009 (Doc. 159);

23. First Amended Complaint-in-Intervention by Two Play Properties, LLC filed on July 31, 2009 (Doc. 186);

24. Cross-Complaint and Counterclaim by Fresno-Madera Land Bank filed on September 18, 2009 (Doc. 320);

25. Second Amended Cross-Complaint and First Amended Counterclaim by Fresno-Madera Land Bank filed on February 17, 2009 (Doc. 432); and

26. Complaint-in-Intervention by Terence J. Long filed on February 17, 2009 (Doc. No. 433).

Doc. 680.

A.    Business Entities Other than Z&S and Z & M

The Schoenburgs move for summary judgment to be absolved of liability for the activities of the following business entity Defendants: Fresno-Madera Federal Land Bank Association, FLCA,

37

Bank of the West, Belknap Pump Company, Inc., Jerry E. Robinson dba Sierra Fire Protection, Two Play Properties, LLC, Two Play Properties Arizona, LLC, Three Play Farms, Four Play Farms, and Four Play Ranch (together, "Business Entity Defendants"). The Schoenburgs contend that because they have no affiliation with any of Business Entity Defendants, they cannot be held responsible for the activities of any of these Defendants. The Schoenburgs' motion for summary judgment on this issue is not addressed in any opposition.

It is undisputed that the Schoenburgs played no role in and are not and have never been owners, shareholders, members, partners, officers or directors in any of the Business Entity Defendants. SSUMF ¶ 5. As they have no affiliation with any Business Entity Defendant, the Schoenburgs' motion for summary judgment as to liability for the activities of the Business Entity Defendants is GRANTED.

B.   <u>Individual Liability Under PACA</u>

In the Ninth Circuit, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers*, 104 F.3d at 283. "A court considering the liability of the individual may look at "the closely-held nature of the corporation, the individual's active management role" and

38

any evidence of the individual's acting for the corporation." *Id*.

There are material factual disputes regarding the extent of the Schoenburgs' knowledge, control and involvement with Z&S. The Trustee and Intervening Plaintiffs have provided evidence showing that L. Schoenburg: (1) never retired from his position as a director of Z & S; (2) never retired from his position as vice-president of Z & S; (3) continued to be a salaried employee on the payroll of Z & S; (4) was listed as a principal of Z & S on its PACA license during relevant time periods; (5) in his capacity as an officer of Z & S, authorized Z & S to guarantee loans provided to ZM; and (6) picked up Z & S checks, ranging between $6,500.00 and $9,000.00, at Z & S' office, cashed them at a bank, and returned the cash to Zaninovich. Trustee and Intervening Plaintiff also provide evidence that M. Schoenburg: (1) was both a director and secretary/treasurer of Z & S; (2) continued to be a salaried employee of Z & S; (3) in her capacity as a loan officer, authorized Z & S to guarantee loans provided to ZM; (4) in 2008 and 2009, cashed at least thirteen Z & S checks at the request of L. Schoenburg, who was himself asked by Zaninovich to cash checks; and (5) received a credit card that was billed to and paid by Z & S. Drawing all inferences in favor of the Trustee and Intervening Plaintiffs, there are material factual disputes that preclude summary judgment. A reasonable trier of face could find, based on the Trustee's and Intervening

39

Plaintiffs' evidence, that the Schoenburgs were in a position to control the PACA assets, and breached their fiduciary duty to preserve the assets.

The Schoenburg's motion for summary judgment as to PACA liability is DENIED.

C.  <u>Fiduciary Duty</u>

The Schoenburgs move for summary judgment on the issue that they did not owe a fiduciary duty to any claimant. As discussed above, there are material issues of fact as to whether the Schoenburgs owed a fiduciary duty to PACA trust beneficiaries.

For all the reasons stated, the Schoenburgs' motion for summary judgment as to the issue of whether they owe a fiduciary duty to the remaining claimants is DENIED.

D.  <u>Unjust Enrichment</u>

The Schoenburgs move for summary judgment on the issue of unjust enrichment. The Schoenburgs contend that the only benefits they received were pursuant to: (1) L. Schoenburg's retirement agreement, which was executed well before the period at issue; and (2) automobile transactions in which the Schoenburgs exchanged cars they owned outright for cars leased by Z&S. There is an absence of evidence to support a claim for unjust enrichment against the Schoenburgs. The Trustee and Intervening Plaintiffs withdrew their opposition to this motion at the July 25, 2011 hearing. No other party has opposed the Schoenburgs'

1   motion.

2   The Schoenburgs' motion for summary judgment as to the issue

3   of unjust enrichment is GRANTED.

4       E.   California Statutes

5   The Schoenburgs move for summary judgment on the causes of

6   action asserted based on breaches of California Food &

7   Agriculture Code §§ 56611, 56615, 56623, and 56620. The

8   Schoenburgs contend that no private right of action exists under

9

10  these sections of the California Food & Agriculture Code.

11  Article 20 of the California Food & Agriculture Code sets

12  forth the California Food & Agriculture Code's civil remedies and

13  penalties. Section 56652(a) provides:

14

15          Any person that violates any provision of this chapter is
            liable civilly in the sum of not less than five hundred
16          dollars ($500) or more than one thousand dollars ($1,000)
            for each and every violation. This sum shall be recovered in
17          an action by the secretary in any court of competent
            jurisdiction. All sums which are recovered pursuant to this
18          section shall be deposited in the State Treasury to the
            credit of the Department of Food and Agriculture Fund.
19
20  Cal. Food & Agr. Code § 56652(a). As to injunctive relief,

21  Section 56651 provides:

22          The director may bring an action to enjoin the violation or
            the threatened violation of any provision of this chapter or
23          of any order which is made pursuant to this chapter in the
            superior court in the county in which such violation occurs
24          or is about to occur.

25  Cal. Food & Agr. Code § 56651. These Sections do not provide a

26  private right of action. No opposing party has provided any

27  statutory basis for a private right of action under the cited

28
                                    41

sections of the California Food & Agriculture Code.

The Schoenburgs' motion for summary judgment as to the causes of action based on California Food & Agriculture Code §§ 56611, 56615, 56623, and 56620 is GRANTED.

F.    39303 Road 56 in Dinuba, California 93618

The Schoenburgs contend that the Trustee seeks to quiet title to the property located at 39303 Road 56 in Dinuba, California 93618 ("Property"), and that it is undisputed that the Schoenburgs claim no interest in the Property. The Trustee does not address this argument in his opposition.

The Schoenburgs' motion for summary adjudication that the Schoenburgs do not claim an interest in the Property is GRANTED.

VI.   CONCLUSION

For the reasons stated:

1. The Trustee's motion for summary judgment is GRANTED in part and DENIED in part, as follows:

    a. GRANTED against Z&S as to Counts II and III;

    b. GRANTED against Zaninovich as to Counts II, III, VII, and VIII; and

    c. DENIED against the Schoenburgs as to Counts II, III, VII, and VIII.

2. The Schoenburgs' motion for summary judgment is GRANTED in part and DENIED in part, as follows:

    a. GRANTED as to:

42

       i. claims based on the activities of business entity

         Defendants other than Z&S and ZM;

     ii. unjust enrichment;

    iii. causes of action based on breaches of California

         Food & Agriculture Code §§ 56611, 56615, 56623,

         and 56620; and

    iv. the Schoenburgs do not claim an interest in the

         Property located at 39303 Road 56 in Dinuba,

         California.

  b. DENIED as to:

       i. PACA liability; and

      ii. fiduciary duty.

3. The Trustee and the Schoenburgs shall submit proposed forms of judgments consistent with this memorandum decision within five (5) days following electronic service of this memorandum decision.

SO ORDERED.

DATED:  August 2, 2011

                                  /s/ Oliver W. Wanger
                                  Oliver W. Wanger
                                  United States District Judge