IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ONIONS ETC., INC., et al.,**<br><br>                              Plaintiffs,<br><br>          v.<br><br>**Z & S FRESH, INC.,**<br><br>                              Defendants.<br><br>**AND ALL RELATED ACTIONS** | 1:09-cv-00906-AWI-MJS<br><br>**ORDER GRANTING IN PART DEFENDANT FRESNO MADERA LAND BANK'S MOTION IN LIMINE**<br><br>**(ECF No. 911)** |

I.    PROCEDURAL HISTORY

Litigation in this case arose out of the financial collapse of Defendant Z&S Fresh, Inc., doing business as Z&S Distributing Company, Inc., a California corporation ("Z&S"). (Compl., ECF No. 1.) Multiple claims and counter claims were filed against and amongst the various Defendants and related parties by a number of creditors. Among these, the Fresno-Madera Federal Land Bank Association, FCLA ("Land Bank") sued Aron and Carrie Margosian for breaching their guaranty of a $4.8 million restructured loan made to ZM Fresh Special T's, Inc, formerly known as ZMC Fresh, Inc (both "ZM"). ZM had been

1

1  formed by Aron Margosian and Martin Zaninovich, the principal of Z&S. The Margosians
2  counter claimed, alleging, as relevant here, that the Land Bank misrepresented that the
3  guaranty would not expose the Margosians to personal liability for ZM's indebtedness.

4  The District Court Judge referred the claims between Land Bank and the
5  Margosians to the undersigned for all purposes based upon the parties' consent to
6  Magistrate Judge jurisdiction. (ECF No. 826.) These claims are set for trial on May 31,
7  2016. (ECF No. 906.)

8  Before the Court is the Land Bank's Motion in Limine to Admit State Court
9  Documents and Testimony. (Motion ("Mot."), ECF No. 911.) The Margosians filed an
10 opposition ("Oppn.," ECF No. 922), and the Land Bank filed a reply (ECF No. 925.) The
11 matter was heard on December 18, 2015. For the reasons stated at the hearing, and as
12 set forth below, the Court grants, in part, the Land Bank's motion in limine.

13 **II.    PARTIES' ARGUMENTS**

14 The Land Bank seeks to introduce at trial documents and testimony from state
15 court proceedings in an unrelated case to show that the Margosians made similar
16 allegations in prior proceedings to those presented here. The Land Bank claims that the
17 documents and testimony will reflect a fraudulent pattern, scheme, or modus operandi
18 on the part of the Margosians, and are indicative of their motive in bringing this lawsuit.
19 Additionally, the Land Bank believes the documents and testimony may be used for
20 impeachment.

21 The Margnosians oppose the introduction of this evidence on the ground that it
22 constitutes improper character evidence, the motion is overbroad, the two actions are
23 not sufficiently similar, and the evidence is unduly prejudicial.

24 **III.   THE PROPOSED EVIDENCE**

25 In the instant action, the Margosians allege that they were fraudulently induced to
26 sign the guaranty by Land Bank representatives Martha Hugger and Rob Frudden, who
27 stated that the documents "would only change the name of ZMC Fresh, Inc. to ZM Fresh
28 Special T's, Inc.," and that the guaranty would not extend to their personal assets.

2

In the state court action, Case No. 10-238202 filed in Tulare County Superior Court, the Margosians' second amended complaint contained nearly identical allegations against Bank of the West representatives Kurt Covington and Erin Bushell. (Complaint in No. 10-238202, ¶¶ 133-34, 450; see ECF No. 912.) Specifically, the Margosians alleged "that the new loan documents were only name change documents which changed the name of Z and S Distributing Inc. to Z and S Fresh Inc.," and that none of their personal assets were at risk. These allegations occurred within approximately one month of the allegations in the instant action.

The Land Bank's motion does not specify which documents and testimony it wishes to introduce to establish the allegations presented in the state court action. However, in its reply and at the hearing, the Lank Bank clarified that it intended to introduce only those allegations contained in the state court second amended complaint and identified above. The Lank Bank also seeks to introduce other guaranties signed around the time as those at issue here and included as exhibits to the state court complaint. However, those guaranties also were produced in this action and thus do not necessarily fall within the scope of this motion in limine. Thus, the Court herein addresses only the Land Bank's intent to introduce allegations in the state court second amended complaint.

**IV.    DISCUSSION**

The Margosians contend that evidence of their state court lawsuit constitutes an improper attempt under FRE 404(b) to characterize them as litigious. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is nonetheless admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Id.

It is true that a party generally is not permitted to cast doubt on a plaintiff's claims by bringing forth evidence suggesting that the plaintiff is particularly or chronically

1  litigious. E.g., Outley v. City of New York, 837 F.2d 587, 594 (2d Cir. 1988); Henderson
2  v. Peterson, No. C 07–2838 SBA, 2011 WL 2838169, *6 (N.D. Cal. July 15, 2011)
3  (excluding evidence tending to show that plaintiff had a history of filing unmeritorious
4  litigation). This is because of the prohibition against character evidence under Rule
5  404(b), as well as the understanding that, under Rule 403, a party's character for
6  litigiousness has little to no probative value and may lead to substantial bias on the part
7  of jurors. Id.

8  Here, however, the Land Bank does not offer evidence of the Margosians' prior
9  allegations to show that the Margosians are chronic litigants or have a propensity to
10 engage in unmeritorious litigation. Rather, the Land Bank seeks to cast doubt on the
11 Margosians' factual allegations in this action and to show that they were engaged in a
12 scheme, common to both actions, to avoid their financial obligations. The Court agrees
13 that the very specific nature of the repeated allegations raises questions about their
14 credibility and may reflect on the Margosians' motive or plan. In this regard, the evidence
15 is clearly relevant.

16 Nonetheless, the Margosians contend that such evidence is inadmissible unless
17 the prior allegations are clearly shown to be fraudulent. This is not entirely accurate.
18 Certainly, where prior litigation is shown to be fraudulent, courts do not hesitate to
19 conclude that such evidence is admissible. Brown v. Sports Clips, No. CIV.A. 10-852,
20 2013 WL 27625, at *3 (E.D. La. Jan. 2, 2013). However, this does not mean that prior
21 litigation evidence is necessarily inadmissible in the absence of proof of fraud.

22 Courts generally disfavor evidence that a party has alleged vaguely similar claims
23 in multiple lawsuits. Thus, for example, courts are unlikely to admit evidence that a
24 plaintiff has initiated multiple lawsuits against prison officials. Seals v. Mitchell, No. C 04–
25 3764 NJV, 2011 WL 1399245, at *5 (N.D. Cal. April 13, 2011). On the other hand, where
26 prior claims are strikingly similar, and the probability of their recurrence is negligible, the
27 evidence may be sufficiently probative even absent a specific showing of fraud.
28 McCormick on Evidence § 196 (7th ed.). E.g., Westfield Ins. Co. v. Harris, 134 F.3d 608

1  (4th Cir. 1998) (error to exclude evidence of plaintiff's six prior house-fire claims and one
2  prior truck-fire claim); Yates v. Sweet Potato Enterprises, Inc., No. C 11-01950 SBA,
3  2013 WL 4067783, at *3 (N.D. Cal. Aug. 1, 2013) (allowing admission of evidence of
4  plaintiff's "hundreds" of other actions asserting similar boilerplate allegations to impeach
5  credibility); Otto v. Commerce St. Capital, No. 12–2472, 2013 WL 2357623, *2 (E.D. Pa.
6  May 29, 2013) (finding that evidence of plaintiffs' prior lawsuits, which made "nearly
7  identical damage claims," was admissible to challenge credibility of their damage
8  claims); Tomaino v. O'Brien, 315 F. App'x 359, 361, 2009 WL 690209 (2d Cir.2009)
9  (upholding admission of evidence concerning plaintiff's five prior lawsuits on the ground
10 that a jury could infer that plaintiff had made "strikingly similar claims [and] that his
11 testimony in support of a sixth such suit was not credible.").

12    Such is the case here. The Margosians have presented very specific allegations
13 of misconduct on the part of two Land Bank employees. The likelihood two other
14 individuals, employed by a different bank, engaged in exactly the same misconduct is
15 not high. Thus, the Court concludes that the evidence is highly probative. The court
16 acknowledges that, unlike the instant case, the majority of cases cited herein involved
17 numerous similar allegations. However, the allegations at issue here are so unusual –
18 and so identical – that they are found to be probative. Additionally, the Margosians have
19 not identified any specific risk of prejudice, other than that imparted by the evidence's
20 probative value as regards their credibility.

21    The Margosians' further argue that the Land Bank's request is overbroad. The
22 Court initially agreed.  However, the Land Bank has since limited its request to the
23 allegations contained in the state court second amended complaint. The Land Bank
24 does not seek, and the Court sees no reason to admit, the entirety of the docket from the
25 state court proceeding. In this regard, the Court shares the Margosians' concern that the
26 admission of state court documents may result in undue delay and waste of time.

27    As the Margosians point out, the second amended complaint is not the operative
28 complaint in the state court action. The Margosians may well have reason to seek

admission of the operative complaint to explain how or why they decided not to pursue the allegations at issue here, and the Court anticipates that such evidence would be admissible for that purpose. However, at present, the Court sees no reason to admit evidence beyond the two pleadings. In particular, and notwithstanding Margosians' protests to the contrary, the Court sees limited, if any, value in evidence tending to prove the veracity of allegations made in the state court case. However, the Court will reserve judgment on what type and how much evidence may be introduced by the Margosians' in response to the credibility issues raised by the similarities between the state and federal pleadings.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that the above-referenced second amended complaint and operative complaint from the state court action, Case No. 10-238202 filed in Tulare County Superior Court, may be offered into evidence at trial, provided a proper foundation is laid. Absent further ruling of the Court, further documents from the state court proceedings will not be referenced or proffered. Moreover, given the present uncertainty as to what will be offered on this issue, neither party shall make reference in opening statements to anything but the two pleadings absent further order of the Court.

IT IS SO ORDERED.

Dated:   December 23, 2015         /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE