IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONIONS ETC., INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Z & S FRESH, INC., et al.,<br><br>Defendants.<br><br>**AND ALL RELATED ACTIONS** | 1:09-cv-00906-AWI-MJS<br><br>**ORDER DENYING DEFENDANT FRESNO MADERA LAND BANK'S MOTION TO STRIKE JURY DEMAND**<br><br>**(ECF No. 913)** |

**I.     PROCEDURAL HISTORY**

Litigation in this case arose out of the financial collapse of Defendant Z&S Fresh, Inc., doing business as Z&S Distributing Company, Inc., a California corporation ("Z&S"). (Compl., ECF No. 1.) Multiple claims and counter-claims were filed against and amongst the various Defendants and related parties by a number of creditors. Among these, the Fresno Madera Federal Land Bank Association, FCLA ("Land Bank") sued Aron and Carrie Margosian for breaching their guaranty of a $4.8 million restructured loan made to ZM Fresh Special T's, Inc, formerly known as ZMC Fresh, Inc (both "ZM"). ZM had been

1    formed by Aron Margosian and Martin Zaninovich, the principal of Z&S. The Margosians

2    counter-claimed, alleging, as relevant here, that the Land Bank fraudulently

3    misrepresented that the guaranty would not expose the Margosians to personal liability

4    for ZM's indebtedness.

5        The District Court Judge referred the claims between Land Bank and the

6    Margosians to the undersigned for all purposes based upon the parties' consent to

7    Magistrate Judge jurisdiction. (ECF No. 826.) These claims are set for trial on May 31,

8    2016. (ECF No. 906.) The Margosians have demanded a trial by jury. (ECF No. 675.)

9        Before the Court is the Land Bank's motion to strike the Margosians' jury demand

10   on the grounds that (1) the Margosians' remaining claims are equitable in nature and

11   seek equitable relief and, as such, no right to jury trial attaches, and (2) the Margosians

12   contractually waived their right to a jury trial. (Motion ("Mot."), ECF No. 913.) The

13   Margosians respond that their claims are in fact legal and not equitable, and that the

14   contractual jury trial waiver is invalid under California law. (Opposition (Oppn.) ECF No.

15   921.)

16   **II.    CONCTRACTUAL WAIVER**

17       "Under California law, pre-dispute jury trial waivers are invalid unless expressly

18   authorized by statute. Federal law, on the other hand, permits such waivers as long as

19   each party waived its rights knowingly and voluntarily." In re Cnty. Of Orange v. U.S.

20   Dist. Ct., 784 F.3d 520, 523 (9th Cir. 2015) (citations omitted). Thus, the validity of the

21   jury trial waiver in the instant case hinges, in part, on whether state or federal law

22   applies.

23       Under Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 (1938), a federal

24   court sitting in diversity applies state substantive law and federal procedural law.

25   Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 419 (1996). This principle applies

26   equally where, as here, the court hears state law claims based on supplemental

27   jurisdiction.  Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).

28       "The law governing jury trial waivers in federal court is federal procedural law." In

2

Case 1:09-cv-00906-MJS   Document 935   Filed 01/25/16   Page 3 of 8

re Cnty. of Orange, 784 F.3d at 531. Nevertheless, the Ninth Circuit recently held that "federal courts sitting in diversity must apply the relevant state law to evaluate the validity of a pre-dispute jury trial waiver when that law is more protective than federal law." Id. at 531-32. Because California law is more protective of the right to jury trial than the federal standard, "district courts sitting in diversity must apply California's rule on pre-dispute jury trial waivers to contracts governed by California law." Id. at 532.

Here, there is no dispute that the guaranty at issue contains provisions waiving the parties' rights to a jury trial with respect to any action or proceeding relating to the guaranty or loan documents. (Mot. at 4; Oppn. at 2.) However, it also is undisputed that the guaranty contains a choice-of-law provision stating that its terms are to be governed by California law. (Oppn. at 2; see Reply, ECF No. 924 at 5.) Under California law, the pre-dispute jury trial waiver here is invalid and does not provide a basis for striking the Margosians' jury demand.

The Court acknowledges the Land Bank's argument that In re County of Orange, decided only eight months ago, should be given only prospective application. However, the Ninth Circuit applied its holding in In re County of Orange retroactively to a contract entered into in 2008. There is no basis for concluding that the holding is to be applied only prospectively.

Accordingly, the contractual jury trial waiver is invalid. The Land Bank's motion to strike the Margosians' jury demand on the basis of this waiver will be denied.

III. **NATURE OF CLAIMS AND DEFENSES**

A. **Legal Standard**

The Seventh Amendment to the United States Constitution, which became effective as part of the Bill of Rights in 1791, provides that: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

Determining whether a jury trial right exists for a particular action is a two-step

3

1  process. The first step involves an historical inquiry: if an issue would have been heard

2  at common law in 1791, it is now triable of right to a jury. However, if the issue

3  historically would have been tried in the courts of equity or otherwise without a jury, no

4  right to a jury trial attaches. Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S.

5  93, 97 (1991) (quotation omitted). The second step requires determining whether the

6  remedy sought "is legal or equitable in nature." Id. (quotation omitted).

7      "[D]etermining as a historical matter whether a particular contract action would

8  have been tried to a jury at English common law in 1791 is at best 'difficult, and even at

9  times impossible.'" Burlington N. R.R. Co. v. Nebraska Pub. Power Dist., 931 F. Supp.

10  1470, 1481 (D. Neb. 1996) (quoting 5 Arthur L. Corbin, Corbin on Contracts, § 1103, at

11  557 (1964)). However, certain categories of contract actions generally were or were not

12  tried to a jury: (1) a breach of contract action claiming damages was tried to a jury, 9

13  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2316, at 125-

14  26 (1995) (citing Ross v. Bernhard, 396 U.S. 531, 542 (1970)); (2) an action claiming

15  that a contract should be reformed was tried to the judge, id. at 130 (citing Great Atl. Ins.

16  Co. v. Liberty Mut. Ins. Co., 773 F.2d 976, 978 (8th Cir.1985)); and (3) an action claiming

17  a right to specific performance of a contract was tried to a judge, id. § 2309, at 85 (citing

18  Turner v. Burlington N. R.R. Co., 771 F.2d 341, 343 (8th Cir. 1985)).

19      A claim of fraud "is not distinctively either a legal issue or one of an equitable

20  nature," id. § 2311, and thus the right to a jury turns on the remedy sought and the

21  context in which the claim of fraud arises.

22      **B.    The Claims at Issue**

23      In this action, the Land Bank has brought a claim for damages against the

24  Margosians for breach of the guaranty. The Bank seeks to recover:  the total amount due

25  under the Restructure Loan; fees, costs, and interest as provided for under the

26  Restructure Loan; attorney's fees; Trustee's fees; and, costs of suit. (ECF No. 432.)

27      The Margosians' answer raises various defenses. (ECF No. 675.) However, at the

28  hearing on the instant motion, the Margosians' counsel explained that they primarily

1    intend to defend on the ground that the Land Bank's fraudulent misrepresentations

2    prevented the formation of a valid contract, and thus there could be no breach.

3        The Margosians also brought against the Land Bank a counter-claim for

4    "Damages for Fraud and Deceit – Intentional Misrepresentation of Facts." (ECF No. 675

5    at 17.)  At the hearing, the Margosians' counsel clarified that the fraud underlying both

6    their affirmative defense and their counter-claim is the same: that Land Bank

7    representatives misrepresented the guaranty to be a name change and misrepresented

8    that the guaranty would not expose the Margosians to personal liability.

9        **C.    Parties' Arguments**

10       The Land Bank argues that the Margosians have no right to a jury trial. According

11   to the Land Bank, no factual issues remain with regard to its claim for breach of the

12   guaranty, other than those raised by the Margosians' defenses and counter-claim.

13   Because the defenses and counter-claim essentially are equitable in nature, the

14   Margosians have no right to a jury trial. (Mot. at 3.)

15       More specifically, the Land Bank argues that the Margosians seek to avoid liability

16   on the guaranty "based upon alleged fraudulent misrepresentations that they were not

17   signing a Guaranty but a name change (the Guaranty should be rescinded based upon

18   fraud) or that the Guaranty, despite its terms, would not cover their personal assets (the

19   Guaranty should be reformed based upon fraud)." (Id.) Similarly, the Bank argues that

20   the Margosians' affirmative claim of fraudulent misrepresentation merely "seek[s] to

21   avoid liability under the 2008 Guaranty based upon the premise that the Margosians are

22   entitled to rescind the contract (they didn't know they were signing a guaranty, but

23   thought it was a name change) or reform the contract to conform it to what they claim

24   was represented (they were told it was a guaranty, but that wouldn't extend to their

25   personal assets)." (Id. at 6.) Because rescission and reformation are equitable remedies,

26   no right to a jury trial attaches. (Id.)

27       The Margosians disagree with this characterization of their claim and defenses as

28   equitable. They argue that, under California law, they have the option to seek to "undo

5

1  the transaction in its entirety" or to seek damages. (Oppn. at 7-8). Here, the Margosians

2  expressly seek damages, a legal remedy. (Id.).

3  In response, the Land Bank acknowledges that the Margosians may elect either

4  to avoid liability under the guaranty or to sue for damages, but argues that they may not

5  do both. (Reply at 2-3.) Thus, if the Margosians choose to affirm the contract and sue for

6  damages, the Court should enter judgment on the Land Bank's claim. (Id. at 3.)

7  **D.    Discussion**

8  The Land Bank's claim for breach of the guaranty is a classic action at law. See

9  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly

10  due under a contract, it would be difficult to conceive of an action of a more traditionally

11  legal character."); Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1194

12  (9th Cir.2000) ("In most instances, a claim seeking money damages for breach of

13  contract is an action at law."). The remedy sought by the Land Bank, i.e. damages, is a

14  legal remedy. Accordingly, a right to trial by jury attaches to this claim.

15  Similarly, the Margosians' counter-claim for fraud seeks money damages, and

16  therefore is a legal claim. See Curriden v. Middleton, 232 U.S. 633 (1914). A right to trial

17  by jury also attaches to this claim.

18  All that remains, then, is the Margosians' affirmative defense to the Land Bank's

19  claim for breach of the guaranty. The Margosians have essentially argued that the

20  nature of their defense is irrelevant because it is brought against a legal claim with an

21  attendant jury trial right. This is not an entirely accurate characterization of the law. In the

22  Ninth Circuit, "[a] litigant is not entitled to have a jury resolve a disputed affirmative

23  defense if the defense is equitable in nature." Granite State Ins. Co. v. Smart Modular

24  Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996). Accordingly, the Court must examine

25  the nature of the Margosians' defense.

26  As an initial matter, the Court notes a significant lack of clarity regarding the

27  Margosians' affirmative defense. However, at the hearing on this matter, the Margosians'

28  counsel explained that they intend to defend on the ground that no valid contract was

1   formed. Specifically, the Margosians contend that they did not assent to material terms

2   of the contract because those terms were fraudulently misrepresented by Land Bank

3   representatives. Because there is no valid contract, there can be no breach. The Court

4   agrees with the Margosians that this defense is distinguishable from the cases cited by

5   the Land Bank (ECF No. 913) in which a defending party specifically brings a counter-

6   claim for the equitable remedies of rescission or reformation.

7        The Court also concludes that the defense is distinguishable from other

8   affirmative defenses that, due to their equitable nature, have been found not to invoke a

9   right to a jury trial. See, e.g., Granite State Ins. Co., 76 F.3d at 1027 (no right to a jury on

10  defense of equitable estoppel); Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir.

11  2001) (no right to a jury on the equitable defense of laches). Significantly, neither the

12  affirmative defense nor the counter-claim seeks equitable relief. Rather, the Margosians

13  are defending on the ground that the Land Bank cannot prove all of the elements

14  necessary to succeed on their cause of action. Thus, they are raising a legal defense.

15  Cf. Brown v. San Diego State Univ. Found., No. 3:13-CV-2294-GPC-NLS, 2015 WL

16  4545857, at *4 (S.D. Cal. July 28, 2015) (finding defense of settlement and release to be

17  a legal defense).

18       Finally, the Court rejects the Land Bank's argument that the Margosians have

19  elected, or are required to elect, between rescission and damages at this juncture. It is

20  true that California law requires a person claiming to be defrauded by false

21  representations to elect between two inconsistent remedies: rescission of the contract, or

22  affirmance and a suit for damages. Hjorth v. Bernstein, 44 Cal. App. 2d 561, 564 (1941).

23  "But the mere attempt to obtain one remedy, or even the commencement of an action

24  seeking one remedy, is not a binding election." 5 Witkin, Summary 10th Torts § 829, p.

25  1201 (2005); see also Hjorth, 44 Cal. App. 2d at 565-66. No binding election occurs until

26  a contract has effectually been affirmed or disaffirmed. Thus, a party is permitted to seek

27  these alternative, inconsistent, remedies in a single action. 5 Summary 10th Torts § 829,

28  p. 1201; Hjorth, 44 Cal. App. 2d at 565. Put simply, "[t]here is nothing inconsistent in [a

7

party] asking for rescission first and damages if he cannot have it." Hjorth, 44 Cal. App. 2d at 565. Although the Margosians eventually may be required to make an election, they need not do so now.

**IV.   CONCLUSION AND ORDER**

Based on the foregoing, the Court concludes the Margosians have a right to a trial by jury on the claims asserted herein. Accordingly, the Land Bank's motion to strike the jury demand is HEREBY DENIED.

IT IS SO ORDERED.

Dated:   January 23, 2016         /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE